## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:25-cv-01125 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| INDUSTRIA DE DISEÑO TEXTIL, S.A., | ) | |
| and ZARA USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Industria de Diseño Textil, S.A. and Zara USA, Inc. (collectively, "Inditex" or "Defendants") for infringement of United States Patent Nos. 11,042,890 (the "'890 Patent"), and 11,301,880 ("the '880 Patent"), 12,026,731 (the "'731 Patent"), and 12,354,121 (the "'121 Patent") (collectively the "Patents-in-Suit").

## THE PARTIES

1.      Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.      Upon information and belief, Defendant Industria de Diseño Textil, S.A. is a Sociedad Anónima organized and existing under the laws of Spain.

3.      Upon information and belief, Defendant Zara USA, Inc. is a corporation organized and existing under the laws of New York, and having a place of business in this District at 2601 Preston Rd., Frisco, TX 75034.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

5.      This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over Inditex at least because Inditex maintains a place of business in this District at 2601 Preston Rd., Frisco, TX 75034, and engages in continuous and systematic business activities within this District, including conduct giving rise to this action.

7.      Inditex has conducted and does conduct business within the State of Texas.

8.      Inditex has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

9.      This Court has personal jurisdiction over Inditex at least because Inditex has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the State of Texas and, on information and belief, within this District, thus committing acts of infringement within the District, and has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Eastern District of Texas. Inditex, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

10.     This Court likewise has personal jurisdiction over Inditex at least because, on information and belief, Inditex has committed acts within this District giving rise to this action and

has established minimum contacts with this forum such that the exercise of jurisdiction over Inditex would not offend traditional notions of fair play and substantial justice.

11.    This Court has specific personal jurisdiction over Inditex in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to Inditex's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

12.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1400(b) and 1391(c)(3) because Defendant Industria de Diseño Textil, S.A. is a business organization subject to suit in any district and because Defendant Zara USA, Inc. maintains a regular and established place of business at 2601 Preston Rd., Frisco, TX 75034, which is in this District and has committed acts of patent infringement in this District.  On information and belief, Defendant Zara USA, Inc. is a wholly owned subsidiary of Defendant Industria de Diseño Textil, S.A.

### ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

13.    Alpha Modus Corp. specializes in the development of innovative retail technologies.

14.    At the core of Alpha Modus's technology portfolio, including the Asserted Patents, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

15.     Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Asserted Patents.

16.     Alpha Modus has entered into several intellectual property licensing agreements outside of litigation. These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '890 PATENT

17.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit A.

18.     The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

19.     The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

20.     The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

21.     The '890 Patent is valid and enforceable.

22.     The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

23.     The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

24.     The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.

25.     The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

26.     Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about
    a person at a retail store, wherein
        (i) the person is in proximity to at least one of the one or more information
            monitoring devices at the retail store,
        (ii) the one or more information monitoring devices are operably
            connected to (A) a server, (B) one or more databases, or (C) both, and
        (iii) the step of gathering information using the one or more information
            monitoring devices comprises
                (A) gathering object identification information of a product that the
                    person is interested in purchasing, and
                (B) gathering sentiment information of the person with respect to
                    the product;
(b) analyzing the information in real time using (A) the server, (B) the one or
    more databases, or (C) both gathered by the information monitoring devices
    about the shopping activities of the plurality of persons to manage inventory
    of the products in the retail store at the one or more product points, wherein

the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

(ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

(iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

(iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

(v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## THE '880 PATENT

27.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880 Patent") titled "Method And System For Inventory Management In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent is attached to this Complaint at Exhibit B.

28.    The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April 1, 2020.

29.    The '880 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

30.    The Patent Office issued the '880 Patent on April 12, 2022, after a full and fair examination.

31.    The '880 Patent is valid and enforceable.

32.    The '880 Patent introduces a novel method and system for real-time inventory management within a retail store setting, designed to improve operational efficiency and customer experience.

33.    The '880 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and inventory management strategies.

34.    The inventors of the '880 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

35.    The '880 Patent provides several advantages over the prior art, such as real-time tracking of product interactions and the ability to send immediate responses for inventory adjustments. This method aims to minimize stockouts, enhance customer satisfaction, and boost sales by ensuring the availability of popular products.

36.    The '880 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management based on data analysis.

37.    Claim 1 of the '880 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein

(i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,

(ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

(iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;

(iv) the one or more information monitoring devices comprise one or more video image devices,

(vi) the step of gathering information using the one or more information monitoring devices comprises

    (A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises (I) the one or more products are picked up by the persons at the retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and

    (B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

    (i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,

    (ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,

    (iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and

    (iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

**THE '731 PATENT**

38.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,026,731 (the "'731 Patent") titled "Method For Personalized Marketing And Advertising Of Retail Products," including the right to sue for all past, present, and future infringement. A true and correct copy of the '731 Patent is attached to this Complaint at Exhibit C.

39.     The '731 Patent issued from U.S. Patent Application No. 18/100,377 filed on January 23, 2023.

40.     The '731 Patent is a continuation of application No. 17/590,605, filed on Feb. 1, 2022.

41.     The Patent Office issued the '731 Patent on July 2, 2024, after a full and fair examination.

42.     The '731 Patent is valid and enforceable.

43.     The '731 Patent introduces a novel method for obtaining an information analysis of a shopper's activities, for tracking the shopper using information monitoring devices to determine location, and for providing targeted communications to that shopper based on their shopping history and real-time location.

44.     The '731 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of delivering personalized marketing and advertising tied to in-store behavior and purchase activity. The patent provides innovative solutions for enhancing consumer engagement and driving sales by delivering targeted coupons, promotions, and product information directly to shoppers.

45.    The inventors of the '731 Patent recognized the need for retailers to adapt to changing consumer behavior by using in-store monitoring technologies to gather information about a shopper's interactions with products, track their location, and then provide communications that direct the shopper to a retail store location and deliver personalized advertising or purchase options.

46.    The '731 Patent provides several advancements over previous methods, such as real-time analysis of consumer product interactions, real-time shopper location tracking, and using this information to provide communications including marketing advertisements, digital coupons, store-specific promotions, and purchase options such as pickup, delivery, or reduced price offers.

47.    The '731 Patent describes and claims a specific system incorporating servers, databases, and information monitoring devices including video image devices to monitor shopping activity, track consumer location, generate a real-time analysis of shopper behavior, and provide personalized product communications and store location information via interactive devices.

48.    Claim 1 of the '731 Patent reads:

1. A method for personalized marketing or advertising of one or more products for purchase by a plurality of persons from retail stores, wherein, for each person in the plurality of persons, the method comprising:
(a) obtaining an information analysis about the shopping activities of the person, wherein,
       (i) the information analysis is an analysis of gathered information by one or more first information monitoring devices about shopping activities of the person,
       (ii) the gathered information comprises gathered product interaction information of the person, wherein
               (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more first information monitoring devices, and
               (B) the product interaction information is based upon shopping by the person of one or more first products,
(b) tracking the person using one or more second information monitoring devices to determine the location of the person;
(c) based upon the determined location of the person, providing the person, via a first interactive device, a communication, wherein the communication comprises

(i) a location communication comprising a retail store location at which the person can purchase a product, wherein the product relates to at least one of the one or more first products, and

(ii) a product communication that is directed to the person based upon the information analysis and that is selected from the group consisting of

    (A) a product communication of marketing or advertising information regarding the product,

    (B) a product communication of a coupon regarding the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

    (C) a product communication of a coupon regarding one or more products that relate to the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

    (D) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to ship the product to the person or an option for the person to pick-up the product, and

    (E) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to purchase the product at a reduced price during a limited period of time.

## THE '121 PATENT

49.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,354,121 (the "'121 Patent") titled "Method And System For Shopping In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '121 Patent is attached to this Complaint at Exhibit D.

50.    The '121 Patent issued from U.S. Patent Application No. 18/651,410 filed on April 30, 2024, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

51.    The Patent Office issued the '121 Patent on July 8, 2025, after a full and fair examination.

52.    The '121 Patent is valid and enforceable.

53.    The '121 Patent introduces a novel system for tracking customer movement, for tracking products retained while shopping, for tracking to a point-of-sale area, and for interfacing with this information in the point-of-sale area for payment of the products.

54.    The '121 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring products retained for purchase and for allowing purchase of the products by the shopper within the point-of-sale area. The patent provides innovative solutions to enhance in-store customer experiences and to increase the speed and efficacy of the shopper's purchase transaction.

55.    The inventors of the '121 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the shopper's purchase experience in a retail store by recording the users location during shopping, the items retained by the customer for purchase, and then providing a seamless purchase experience for the shopper at the point-of-sale area of the retail store.

56.    The '121 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the speed and ease of the customer's purchase experience.



FIG. 1



FIG. 2

57.    The '121 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and items selected for purchase, maintain a list of items selected for purchase, and providing for purchase of such items in the point-of-sale area of the retail store.

58.    Claim 1 of the '121 Patent reads:

1. A method comprising using a system comprising a server, one or more information monitoring devices, and one or more databases, wherein the method comprises:

(a) using at least one of the one or more information monitoring devices to identify a first person at a retail store, wherein

(i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,

(ii) the one or more first information monitoring devices are selected from a group consisting of computing devices, user input and output devices, displays, POS devices, cameras, sensors; WIFI devices; in-store customer devices; output devices; system for communicating to user devices, and kiosks, and

(iii) the one or more information monitoring devices are operably connected to (A) the server, (B) the one or more databases, or (C) both;

(b) using at least one of the one or more of the information monitoring devices to gather shopping information of the first person at the retail store, wherein

    (i) the gathered shopping information comprises gathered traffic information of the first person, wherein

        (A) the gathered traffic information comprises traffic information of the first person gathered by at least one of the one or more information monitoring devices, and

        (B) the traffic information comprises identification of one or more stops that the first person makes within and about the retail store,

    (ii) the gathered shopping information further comprises gathered product interaction information of the first person at the retail store, wherein

        (A) the gathered product interaction information comprises product interaction information of the first person gathered by at least one of the one or more information monitoring devices, and

        (B) the product interaction information is based upon type of product interactions the first person had with one or more products at the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products viewed by the first person at the retail store at each of the one or more stops, (II) the one or more products picked up by the first person at the retail store at each of the one or more stops, (III) the one or more products put down by the first person at the retail store at each of the one or more stops, ((IV) the one or more products carried away by the first person at the retail at each of the one or more stops, and (V) combinations thereof, and

    (iii) the gathered shopping information further comprises gathered object identification information, wherein

        (A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and

        (B) the object identification information comprises the one or more products that the first person interacted with during the product interactions; and

(c) analyzing by the system, in real time, the gathered shopping information to generate and maintain a list of the one or more products that the first person interacted with during the product interactions, wherein the list comprises a

listing of the products retained by the first person while shopping at the retail store;

(d) using the one or more of the information monitoring devices to track the first person to a point-of-sale area of the retail store;

(e) in response to the first person being tracked to the point-of sale area, interfacing the system, in real time, with a payment system for payment by the first person of the list of the products retained by the first person while shopping at the retail store at the point-of-sale area; and

(f) transmitting a receipt to the first person after payment by the first person, wherein the receipt comprises the list of the products purchased at the retail store.

## INDITEX

59.    Inditex is a multinational clothing company and the world's largest fast-fashion group. It is the parent company of several brands, including its Zara brand, as well as Pull&Bear, Massimo Dutti, Bershka, Stradivarius, Oysho, and Zara Home brands.  Inditex operates multiple retail stores in the United States, including Zara-branded stores.

60.    Inditex utilizes RFID tags in order to track garments by  model and size in order to determine when particular models and sizes of garments in its stores, including its Zara-branded stores, require replenishing.

61.    Inditex also provides a Zara-branded app available to consumers on their phones and other mobile devices which allow consumers to purchase items in retail stores; interact with items and displays within the stores; obtain inventory and specific location information of items within a particular Zara-branded store; scan products in stores for more information about the product; purchase items for pick-up from a store within the app; purchase items for shipping to the consumer within the app; as well as find to nearest location of a Zara-branded store within the app based on the consumer's location.

62.    For purposes of this action, the Accused Products include the Zara-branded retail environment implementing, without limitation, at least (a) Inditex's RFID garment and inventory system used for in-store inventory analytics and other analytics purposes; (b) Inditex's Zara-

branded mobile app; (c) Inditex's in-store digital video surveillance system; and (d) Inditex's inventory management and replenishment software, systems, and technologies (collectively, the "Accused Products").

63.    The Accused Products practice the patented systems and methods of the Asserted Patents.

64.    Inditex has been aware of Alpha Modus and the Asserted Patents at least as early as the filing of this Complaint.

65.    The financial gains accrued by Inditex through the use of Alpha Modus's patented technology have been substantial, providing Inditex with competitive advantages in the retail market.

66.    The benefits reaped by Inditex through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

67.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Inditex, which has led to significant commercial gains for Inditex at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

68.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

69.    Inditex has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the Accused Products.

70.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

71.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

72.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

73.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

74.    Inditex has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

75.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

76.    Inditex's infringing activities are and have been without authority or license under the '890 Patent.

77.    As a direct and proximate result of Inditex's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

78.    Alpha Modus is informed and believes, and on that basis alleges, that Inditex has been aware of the '890 Patent and its infringement thereof.  Despite this knowledge, Inditex has continued to make, use, sell, and offer for sale the Accused Products.

79.     Alpha Modus is informed and believes that Inditex knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, Inditex has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

80.     Alpha Modus is informed and believes that Inditex has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

81.     Therefore, Inditex's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

82.     As such, Inditex has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

83.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

84.     Inditex is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

85.     Inditex has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '890 Patent.

86.    Inditex's use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. Inditex encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

87.    Inditex's knowledge of the '890 Patent, combined with its ongoing use of the Accused Products, demonstrates Inditex's knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent..

88.    Inditex's actions and the manner in which the Accused Products are used in Inditex's stores, consistent with Inditex's instructions, demonstrate Inditex's specific intent to induce infringement of the '890 Patent.

89.    Alpha Modus is informed and believes, and on that basis alleges, that Inditex knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Inditex, one or more claims of the '890 Patent.

90.    As a direct and proximate result of Inditex's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

91.    Alpha Modus is entitled to recover from Inditex compensation in the form of monetary damages suffered as a result of Inditex's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '880 PATENT)

92.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

93.    Inditex has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including the Accused Products.

94.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '880 Patent.

95.    The Accused Products include the use of one or more information monitoring devices to gather information about the shopping activities of persons at a retail store, in line with claim 1 of the '880 Patent.

96.    Inditex's retail stores include a plurality of products stocked within the stores.

97.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and include video image devices.

98.    The Accused Products perform functions such as gathering product interaction information of the person with respect to the products that the person interacts with and gathering object identification information for the products that the persons interacted with during the product interactions.

99.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to sending a communication to a retail person regarding the inventory of the products interacted with.

100.    Inditex has directly infringed the '880 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

101.    The Accused Products satisfy each and every element of the asserted claim of the '880 Patent either literally or under the doctrine of equivalents.

102.     Inditex's infringing activities are and have been without authority or license under the '880 Patent.

103.     As a direct and proximate result of Inditex's infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

104.     Alpha Modus is informed and believes, and on that basis alleges, that Inditex has been aware of the '880 Patent and its infringement thereof.  Despite this knowledge, Inditex has continued to make, use, sell, and offer for sale the Accused Products.

105.     Alpha Modus is informed and believes that Inditex knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, Inditex has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

106.     Alpha Modus is informed and believes that Inditex has made no efforts to avoid infringement of the '880 Patent, despite its knowledge and understanding that its products and systems infringe the '880 Patent.

107.     Therefore, Inditex's infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

108.     As such, Inditex has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '880 PATENT)

109.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

110.   Inditex is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '880 Patent.

111.   Inditex has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '880 Patent.

112.   Inditex's use of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. Inditex encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '880 Patent.

113.   Inditex's knowledge of the '880 Patent, combined with its ongoing use of the Accused Products, demonstrates Inditex's knowledge and intent that the Accused Products be used in a manner that infringes the '880 Patent..

114.   Inditex actions and the manner in which the Accused Products are used in Inditex's stores, consistent with Inditex's instructions, demonstrate Inditex's specific intent to induce infringement of the '880 Patent.

115.   Alpha Modus is informed and believes, and on that basis alleges, that Inditex knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Inditex, one or more claims of the '880 Patent.

116.    As a direct and proximate result of Inditex's induced infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

117.    Alpha Modus is entitled to recover from Inditex compensation in the form of monetary damages suffered as a result of Inditex's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '731 PATENT)

118.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

119.    Inditex has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '731 Patent, including the Accused Products.

120.    The Accused Products utilize one or more information monitoring devices associated with consumers, for tracking the location of consumers using information monitoring devices, and for providing product communications and store location information based on such analyses, as claimed in the '731 Patent.

121.    The Accused Products utilize servers comprising one or more processors, and server-based databases and applications storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '731 Patent.

122.    The functions implemented by the Accused Products include analyzing gathered product interaction information from consumer shopping activities, tracking the consumer's location relative to retail stores, and generating real-time communications including promotions, coupons, advertising, and purchase options.

123.    The Accused Products allow Inditex as well as Inditex's customers to provide targeted communications to consumers, including coupons, marketing messages, and purchase options such as pickup, delivery, and reduced-price offers during limited promotional periods, all in accordance with the claimed inventions of the '731 Patent.

124.    Inditex has directly infringed the '731 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '731 Patent.

125.    The Accused Products satisfy each and every element of the asserted claim of the '731 Patent either literally or under the doctrine of equivalents.

126.    Inditex's infringing activities are and have been without authority or license under the '731 Patent.

127.    As a direct and proximate result of Inditex's infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

128.    Alpha Modus is informed and believes, and on that basis alleges, that Inditex has been aware of the '731 Patent and its infringement thereof.  Despite this knowledge, Inditex has continued to make, use, sell, and offer for sale the Accused Products.

129.    Alpha Modus is informed and believes that Inditex knew or was willfully blind to the patented technology of the '731 Patent. Despite this knowledge or willful blindness, Inditex has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

130.    Alpha Modus is informed and believes that Inditex has made no efforts to avoid infringement of the '731 Patent, despite its knowledge and understanding that its products and systems infringe the '731 Patent.

131.     Therefore, Inditex's infringement of the '731 Patent is willful and egregious, warranting an enhancement of damages.

132.     As such, Inditex's has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '731 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '731 PATENT)

133.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

134.     Inditex is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '731 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '731 Patent.

135.     Inditex has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '731 Patent.

136.     Inditex's use of the Accused Products demonstrates specific intent to induce infringement of the '731 Patent. Inditex encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '731 Patent.

137.     Inditex's knowledge of the '731 Patent, combined with its ongoing use of the Accused Products, demonstrates Inditex's knowledge and intent that the Accused Products be used in a manner that infringes the '731 Patent..

138.    Inditex's actions and the manner in which the Accused Products are used in Inditex's stores, consistent with Inditex's instructions, demonstrate Inditex's specific intent to induce infringement of the '731 Patent.

139.    Alpha Modus is informed and believes, and on that basis alleges, that Inditex knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Inditex, one or more claims of the '731 Patent.

140.    As a direct and proximate result of Inditex's induced infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

141.    Alpha Modus is entitled to recover from Inditex compensation in the form of monetary damages suffered as a result of Inditex's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT INFRINGEMENT OF THE '121 PATENT)

142.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

143.    Inditex has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '121 Patent, including the Accused Products.

144.    The Accused Products embody a method for gathering information about shopping activities of consumers utilizing the Accused Products at a retail store in a retail store setting, as claimed in the '121 Patent.

145.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '121 Patent.

146.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

147.    The Accused Products generate allow the user to make payments in point-of-sale areas once the consumer has finished shopping, allowing the user to purchase the retained products quickly.

148.    Inditex has directly infringed the '121 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '121 Patent.

149.    The Accused Products satisfy each and every element of the asserted claims of the '121 Patent either literally or under the doctrine of equivalents.

150.    Inditex's infringing activities are and have been without authority or license under the '121 Patent.

151.    As a direct and proximate result of Inditex's infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

152.    Alpha Modus is informed and believes, and on that basis alleges, that Inditex has been aware of the '121 Patent and its infringement thereof. Despite this knowledge, Inditex has continued to make, use, sell, and offer for sale the Accused Products.

153.    Alpha Modus is informed and believes that Inditex knew or was willfully blind to the patented technology of the '121 Patent. Despite this knowledge or willful blindness, Inditex has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

154.    Alpha Modus is informed and believes that Inditex has made no efforts to avoid infringement of the '121 Patent, despite its knowledge and understanding that its products and systems infringe the '121 Patent.

155.    Therefore, Inditex's infringement of the '121 Patent is willful and egregious, warranting an enhancement of damages.

156.    As such, Inditex has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '121 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

## (INDUCED PATENT INFRINGEMENT OF THE '121 PATENT)

157.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

158.    Inditex is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '718 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '121 Patent.

159.    Inditex's use of the Accused Products demonstrates specific intent to induce infringement of the '121 Patent. Inditex encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '121 Patent.

160.    Inditex's knowledge of the '121 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Inditex's knowledge and intent that the Accused Products be used in a manner that infringes the '121 Patent.

161.    Inditex's actions and the manner in which the Accused Products are used in Inditex's stores, consistent with Inditex's instructions, demonstrate Inditex's specific intent to induce infringement of the '121 Patent.

162.    Alpha Modus is informed and believes, and on that basis alleges, that Inditex knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Inditex, one or more claims of the '121 Patent.

163.    As a direct and proximate result of Inditex's induced infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

164.    Alpha Modus is entitled to recover from Inditex compensation in the form of monetary damages suffered as a result of Inditex's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Alpha Modus prays for relief against Inditex as follows:

(A)    An entry of judgment that Inditex has infringed and is directly infringing one or more claims of each of the '890 Patent, the '880 Patent, the '731 Patent, and the '121 Patent;

(B)    An entry of judgment that Inditex has infringed and is indirectly infringing one or more claims of each of the '890 Patent, the '880 Patent, the '731 Patent, and the '121 Patent;

(C)    An entry of judgment that the '890 Patent, the '880 Patent, the '731 Patent, and the '121 Patent are valid and enforceable;

(D)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Inditex, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the '890 Patent, the '880 Patent, the '731 Patent, and the '121 Patent;

(E)    An order awarding damages sufficient to compensate Alpha Modus for Inditex's infringement of the '890 Patent, the '880 Patent, the '731 Patent, and the '121 Patent; but in no event less than a reasonable royalty, together with interest and costs;

(F)    A determination that Inditex's infringement has been willful, wanton, deliberate, and egregious;

(G)    A determination that the damages against Inditex be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)    A finding that this case against Inditex is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)    An accounting of all infringing sales and revenues of Inditex, together with post

judgment interest and prejudgment interest from the first date of infringement of

the '890 Patent, the '880 Patent, the '731 Patent, and the '121 Patent; and

(J)    Such further and other relief as the Court may deem proper and just.

Dated: November 14, 2025                     Respectfully submitted,

*/s/ Christopher E. Hanba*
Christopher E. Hanba
Texas Bar No. 24121391
chanba@princelobel.com
Ariana D. Pellegrino *
Michigan Bar No. P79104
apellegrino@princelobel.com
Joshua G. Jones
Texas Bar No. 24065517
jjones@princelobel.com
Bryan D. Atkinson
Texas Bar No. 24036157
batkinson@princelobel.com
    * Not admitted in Texas

PRINCE LOBEL TYE LLP
500 W. 5th Street, Suite 1205
Austin, Texas 78701
Tel: (617) 456-8000

*Attorneys for Plaintiff*
*Alpha Modus, Corp.*