**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| ALPHA MODUS, CORP.,<br><br>        Plaintiff,<br><br>    v.<br><br>INDUSTRIA de DISEÑO TEXTIL, S.A.,<br>and ZARA USA, INC.,<br><br>        Defendants. | Civil Action No. 2:25-cv-01125-JRG-RSP |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     STATEMENT OF THE ISSUES............................................................................ 2

III.    FACTUAL BACKGROUND................................................................................ 2

      A.      The Asserted Patents ................................................................................ 2

      B.      Alpha Modus's Complaint ......................................................................... 4

IV.     LEGAL STANDARD........................................................................................... 7

V.      ARGUMENT........................................................................................................ 8

      A.      Alpha Modus fails to plausibly plead a claim for direct infringement. .................. 8

      B.      Alpha Modus fails to plausibly plead a claim for induced infringement.............. 11

          1.      Alpha Modus does not plausibly allege a direct infringer. ...................... 11

          2.      Alpha Modus fails to plausibly allege intent or knowledge. .................... 12

      C.      Alpha Modus fails to state a claim for enhanced damages. ................................ 15

VI.     CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adnexus Inc. v. Meta Platforms, Inc.*,
  160 F.4th 1216 (Fed. Cir. 2025) .........................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................7, 8, 9

*Atlas Glob. Techs., LLC v. Sercomm Corp.*,
  638 F. Supp. 3d 721 (W.D. Tex. 2022)...............................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................7, 12

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)...........................................................................................8

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) .......................................................................................8, 10

*Chhim v. Univ. of Tex. at Austin*,
  836 F.3d 467 (5th Cir. 2016) ..............................................................................................7

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-cv-751-JDL, 2015 WL 5000397 (E.D. Tex. June 3, 2015) ......................................13

*De La Vega v. Microsoft Corp.*,
  W-19-cv-00612-ADA, W-19-cv-00617-ADA,
  2020 WL 3528411 (W.D. Tex. Feb. 7, 2020)............................................................10, 11, 12

*Digitaldoors, Inc. v. Comerica Bank*,
  No. 2:23-cv-00541-JRG-RSP, 2024 WL 4329026 (E.D. Tex. Sep. 9, 2024)...........................8

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018)...........................................................................................8

*Erickson v. Pardus*,
  551 U.S. 89 (2007).............................................................................................................8

*Estech Sys., Inc. v. Target Corp.*,
  No. 2:20-cv-00123-JRG-RSP, 2020 WL 6496425 (E.D. Tex. Aug. 10, 2020)........................8

*Fenner Invs., Ltd. v. Cellco P'ship*,
  No. 6:11-cv-348, 2012 WL 12785031 (E.D. Tex. Mar. 27, 2012).........................................9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)......................................................................................................12

*Greenthread, LLC v. OmniVision Techs., Inc.*,
   No. 2:23-cv-00212-JRG, 2023 WL 8653155 (E.D. Tex. Dec. 14, 2023)................................10

*John Bean Techs. Corp. v. Morris & Assocs., Inc.*,
   988 F.3d 1334 (Fed. Cir. 2021).......................................................................................15

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).......................................................................................12

*Motiva Pats., LLC v. Sony Corp.*,
   408 F. Supp. 3d 819 (E.D. Tex. 2019)..........................................................................12, 13

*Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*,
   No. 6:11-cv-495-LED, 2013 WL 12153575 (E.D. Tex. Mar. 25, 2013)................................14

*NXP USA Inc. v. MediaTek Inc.*,
   No. 2:21-cv-00318-JRG, 2022 WL 799071 (E.D. Tex. Mar. 15, 2022)................................13

*Preferential Networks IP, LLC v. AT&T Inc. Mobility, LLC*,
   No. 2:16-cv-01374-JRG-RSP, 2017 WL 3816109 (E.D. Tex. July 15, 2017) ........................15

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
   No. 4:19-cv-876-SDJ, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020)..................................12

*Ruby Sands LLC v. Am. Nat'l Bank of Texas*,
   No. 2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016)................................10

*Signode Indus. Grp. LLC v. Samuel, Son & Co., Ltd.*,
   No. 2:24-cv-80-JRG, 2024 WL 3543408 (E.D. Tex. July 25, 2024).....................................14

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ............................................................................................8

*SQWIN SA v. Walmart, Inc.*,
   No. 4:22-CV-1040-SDJ, 2023 WL 4236896 (E.D. Tex. June 28, 2023)..................................8

*Stragent, LLC v. BMW of N. Am., LLC*,
   No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ........................12

*Touchstream Techs., Inc. v. Altice USA, Inc.*,
   No. 2:23-cv-00060-JRG, 2024 WL 1117930 (E.D. Tex. Mar. 14, 2024)...............................14

**Statutes**

35 U.S.C. § 284.............................................................................................................15

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................2, 7

## I.    **<u>INTRODUCTION</u>**

The Complaint does not state a plausible claim for patent infringement because it fails to give Industria de Diseño Textil, S.A. ("Inditex") and Zara USA, Inc. ("Zara") (collectively "Defendants") fair notice of the basis for Alpha Modus's infringement claims.

Alpha Modus does not plead facts demonstrating that Defendants use any of the Accused Products to allegedly infringe any asserted method patent claim. In conclusory fashion, Alpha Modus lumps together RFID tags, an app, video cameras, and catchall categories of retail technology as Accused Products, asserting that Defendants track their customers in retail stores and allow them to research, find, purchase, and pick up products. *E.g.*, Compl. ¶¶ 59–62 (Dkt. No. 1). These four paragraphs represent the extent of factual allegations, as opposed to legal conclusions, underpinning Alpha Modus's claims. For each Asserted Patent,[1] Alpha Modus fails to sufficiently describe Defendants' assertedly infringing conduct, instead parroting claim elements and concluding that an unspecified aspect of the Accused Products does what is claimed. This conclusory approach to infringement allegations does not give Defendants fair notice of Alpha Modus's theory of infringement, such that Defendants cannot adequately investigate Alpha Modus's allegations. Inadequate descriptions of operating a retail store paired with fact-free conclusions are not enough to state a plausible claim.

The implausibility of Alpha Modus's allegations of direct infringement also requires dismissal of its claims for indirect infringement and enhanced damages, which require sufficient allegations of direct infringement as a predicate. Further, these extra claims are independently

---

[1] Alpha Modus asserts four patents directed to various retail technology concepts, including employee management, customer behavior analysis, real-time inventory management, personalized marketing, and point-of-sale systems: U.S. Patent Nos. 11,042,890 (the "'890 Patent"), 11,301,880 (the "'880 Patent"), 12,026,731 (the "'731 Patent"), and 12,354,121 (the "'121 Patent") (collectively, the "Asserted Patents").

insufficient: Alpha Modus does not plead facts plausibly suggesting that Defendants specifically intended any of its customers or staff to infringe, that Defendants had pre-suit knowledge of the Asserted Patents, or that Defendants engaged in deliberate wrongdoing.

For these reasons, the Complaint should be dismissed.

## II.   STATEMENT OF THE ISSUES

Whether Alpha Modus's claims of direct infringement should be dismissed under Rule 12(b)(6) because the Complaint fails to plausibly allege that the Accused Products satisfy the elements of at least one claim of each Asserted Patent.

Whether Alpha Modus's claims of indirect infringement should be dismissed under Rule 12(b)(6) because the Complaint fails to plausibly allege direct infringement, or, alternatively, plausibly allege that Defendants had pre-suit knowledge of or intended to infringe the Asserted Patents.

Whether Alpha Modus's claim for enhanced damages should be dismissed under Rule 12(b)(6) because the Complaint fails to plausibly allege pre-suit knowledge of any Asserted Patent or any deliberate wrongdoing in relation to any Asserted Patent.

## III.   FACTUAL BACKGROUND

### A.   The Asserted Patents

All four Asserted Patents are members of the same family, share a common written description, and are directed to methods for gathering shopper information, analyzing that information using off-the-shelf technologies, and using that analysis for retail purposes:

- The '890 Patent is directed to a method of acting upon "a customer's interaction with products in a retail store" by "gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience." Compl. ¶ 25.

- The '880 Patent is directed to a method "incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management based on data analysis." *Id.* ¶ 36.

- The '731 Patent is directed to a "method for obtaining an information analysis of a shopper's activities, for tracking the shopper using information monitoring devices to determine location, and for providing targeted communications to that shopper based on their shopping history and real-time location." *Id.* ¶ 43.

- The '121 Patent is directed to a method of "recording the user[']s location during shopping, the items retained by the customer for purchase, and then providing a seamless purchase experience for the shopper at the point-of-sale area of the retail store." *Id.* ¶ 55.

There are five independent method claims: claim 1 of the '890 Patent; claim 1 of the '880 Patent; claim 1 of the '731 Patent; and claims 1 and 21 of the '121 Patent. All five claims recite modest variations of the same framework: (1) gather information; (2) analyze that gathered information; and (3) use that analysis for shopper-assistance, inventory, marketing, or sale-facilitation purposes. For example, claim 1 of the '890 Patent provides:

| Step | '890 Patent Claim 1 |
|---|---|
| (1) Gathering information about the shopper | A method comprising: <br><br> (a) using one or more information monitoring devices to **gather information** about a person at a retail store wherein (i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store, (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and (iii) the step of **gathering information** using the one or more information monitoring devices comprises (A) **gathering object identification information** of a product that the person is interested in purchasing, and (B) **gathering sentiment information** of the person with respect to the product; |
| (2) Analyzing the gathered information | (b) **analyzing** the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the **analyzed information** comprises the object identification information and the sentiment information; and |

3

| Step | '890 Patent Claim 1 |
|---|---|
| (3) Using the analyzed information for retail purposes | (c) **providing a response** in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of (i) **sending a communication** to the person directing the person to a location in the retail store at which the person can interact with the product, (ii) **engaging the person** based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product, (iii) **sending a communication** to a second person in the retail store who can then in real time interact with the person regarding the product, (iv) **providing marketing or advertising information** to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and (v) **providing a coupon** to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon. |

'890 Patent (Dkt. No. 1-1) at 21:39–22:19 (emphases added).

## B.    Alpha Modus's Complaint

The Complaint does not allege that any single Accused Product practices every step of any asserted patent claim. Instead, it accuses the "Zara-branded retail environment," defining the "Accused Products" as comprising RFID tags, the Zara-branded app, in-store video cameras, and overlapping, catchall categories:

> [T]he Accused Products include the Zara-branded retail environment implementing, without limitation, at least (a) Inditex's RFID garment and inventory system used for in-store inventory analytics and other analytics purposes; (b) Inditex's Zara-branded mobile app; (c) Inditex's in-store digital video surveillance system; and (d) Inditex's inventory management and replenishment software, systems, and technologies (collectively, the "Accused Products").

Compl. ¶ 62. Alpha Modus's descriptions of what Defendants allegedly do with these technologies are sparse—it asserts that Defendants use "RFID tags in order to track garments by model and size in order to determine when particular models and sizes of garments in its stores, including its Zara-branded stores, require replenishing" and that Defendants use the Zara-branded app to:

[A]llow consumers to purchase items in retail stores; interact with items and displays within the stores; obtain inventory and specific location information of items within a particular Zara-branded store; scan products in stores for more information about the product; purchase items for pick-up from a store within the app; purchase items for shipping to the consumer within the app; as well as find to [sic] nearest location of a Zara-branded store within the app based on the consumer's location.

*Id.* ¶¶ 60–61. No further factual allegations regarding Defendants' conduct are provided. At best, Alpha Modus has accused Defendants of tracking products with RFID tags and offering a branded app—it has otherwise failed to describe anything else about Defendants' alleged conduct, let alone give fair notice of its infringement theory for each Asserted Patent.

As an illustration of Alpha Modus's lack of factual allegations, compare claim 1 of the '890 Patent and Alpha Modus's assertion that Defendants directly infringe that claim (color added for ease of comparison):

| '890 Patent Claim 1 | Count I of Complaint |
|---|---|
| (a) **using one or more information monitoring devices to gather information about a person at a retail store** wherein (i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store, (ii) the one or more information monitoring devices are **operably connected to (A) a server, (B) one or more databases, or (C) both**, and (iii) the step of gathering information using the one or more information monitoring devices comprises (A) **gathering object identification information of a product** that the person is interested in purchasing, and (B) **gathering sentiment information of the person with respect to the product**; (b) **analyzing the information in real time** using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and (c) **providing a response** in real time **based upon the analyzed information gathered by the information monitoring devices**, wherein the response is selected from a group consisting of (i) sending a communication to the person **directing the person to a location in the retail store at which the person can** | 71. The Accused Products include the **use of one or more information monitoring devices to gather information about a person at a retail store**, in line with claim 1 of the '890 Patent.<br><br>72. The Accused Products **are operably connected to (A) a server, (B) one or more databases, or (C) both**, and perform functions such as **gathering object identification information of a product and gathering sentiment information of the person with respect to the product**.<br><br>73. The Accused Products **analyze the information in** |

5

| '890 Patent Claim 1 | Count I of Complaint |
|---|---|
| **interact with the product**, (ii) **engaging the person based upon the product**, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product, (iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product, (iv) **providing marketing or advertising information** to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and (v) **providing a coupon** to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon. | **real time** and **provide a response based upon the analyzed information gathered by the information monitoring devices,** including but not limited to **directing a person to a product location, engaging the person based on the product**, **providing marketing or advertising information, and offering coupons**. |

'890 Patent at 21:40–22:19 (emphases added); Compl. ¶¶ 71–73 (emphases added). Alpha Modus has done little more than append the phrase "[t]he Accused Products" to pared-down versions of the claim language. Alpha Modus then recites the legal elements of direct infringement, concluding that "[t]he Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents." Compl. ¶ 75.

This pattern is repeated. The direct infringement claims (Counts I, III, V, and VII) list claim limitations and summarily conclude that some unexplained aspect of the Accused Products infringes that Asserted Patent. *Id.* ¶¶ 68–82, 92–108, 118–32, 142–56. As described above, there are only four paragraphs of factual allegations related to Defendants' conduct, each of which fails to allege how the Accused Products practice many method steps. *See id.* ¶¶ 59–62. The numbered counts provide only legal conclusions, not factual allegations. So Defendants and the Court must fill in capacious blanks to understand how Alpha Modus formed its erroneous belief that Defendants are liable for direct infringement.

Similarly, for the indirect infringement claims (Counts II, IV, VI, and VIII), Alpha Modus simply asserts that the Accused Products infringe, that Defendants know this, and that Defendants

knowingly induce, aid, and direct their customers and staff to use the Accused Products to infringe. *See id.* ¶¶ 83–91, 109–17, 133–41, 157–64. While Alpha Modus alleges that Defendants are liable for induced infringement since "at least as early as the filing of this Complaint," (*id.* ¶¶ 84, 110, 134, 158), it does not describe any pre-suit communications between the parties or otherwise allege how Defendants could have known of the Asserted Patents prior to service of the Complaint. Alpha Modus's conclusory assertions regarding "instructions" allegedly given to Defendants' customers or staff are similarly devoid of factual allegations. *Id.* ¶¶ 88–89, 114–15, 138–39, 161–62.

Finally, Alpha Modus does not allege any facts in support of its assertions that Defendants intended to or actually induced others to infringe the Asserted Patents. Rather, Alpha Modus merely states that "Defendants encourage, direct, aid, and abet the use and operation of the Accused Products in a manner that infringes." *Id.* ¶¶ 86, 112, 136, 159. Alpha Modus also fails to allege any facts suggesting that Defendants engaged in deliberate wrongdoing in relation to the Asserted Patents. *Id.* ¶¶ 82, 108, 132, 156.

This is insufficient under Rule 12(b)(6).

## IV.    <u>LEGAL STANDARD</u>

A complaint must contain factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible only when the pleaded facts allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* Allegations that are merely consistent with liability "stop[] short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Courts do not accept as true "threadbare recitals of the elements of a cause of action" or conclusory assertions. *Iqbal*, 556 U.S. at 678; *accord Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (courts "do not credit conclusory allegations or allegations that merely

restate the legal elements of a claim"). "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1221 (Fed. Cir. 2025) (cleaned up).

## V.    **ARGUMENT**

### A.    **Alpha Modus fails to plausibly plead a claim for direct infringement.**

Alpha Modus fails to state a claim for direct infringement. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679). While failing to include element-by-element allegations for all claims of each asserted patent "does not automatically make the pleadings insufficient" (*Digitaldoors, Inc. v. Comerica Bank*, No. 2:23-cv-00541-JRG-RSP, 2024 WL 4329026, at *2 (E.D. Tex. Sep. 9, 2024)), a complaint must still provide "fair notice" of the infringement claim and "the ground[s] upon which it rests[.]" *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Courts will "will not 'stain to find inferences favorable to the plaintiffs.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (citation omitted).

"[F]air notice" of direct infringement "requires the plaintiff to plausibly allege that the accused products meet 'each and every element of at least one claim' of the asserted patent[s]." *SQWIN SA v. Walmart, Inc.*, No. 4:22-cv-1040-SDJ, 2023 WL 4236896, at *2 (E.D. Tex. June 28, 2023) (quoting *Disc Disease*, 888 F.3d at 1260); *see also In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1342 (Fed. Cir. 2012) ("[F]ailure to allege facts that plausibly suggest a specific element or elements of a claim have been practiced may be fatal in the context of a motion to dismiss."). A patentee need not plead every SKU or product code that could satisfy its theory of infringement. *Estech Sys., Inc. v. Target Corp.*, No. 2:20-cv-00123-JRG-RSP,

8

2020 WL 6496425, at *3 (E.D. Tex. Aug. 10, 2020), *report & recommendation adopted*, No. 2:20-cv-00123-JRG-RSP, 2021 WL 966016 (E.D. Tex. Mar. 12, 2021). But it still must articulate that theory—sufficient factual allegations regarding a system's operation are necessary because "[m]erely identifying the entire system and directing the Court and the [d]efendants to the claims of the [asserted patent] to determine what aspect of the system infringes is not enough." *Fenner Invs., Ltd. v. Cellco P'ship*, No. 6:11-cv-348, 2012 WL 12785031, at *2 (E.D. Tex. Mar. 27, 2012).

The Complaint provides no such fair notice. There are only four paragraphs that allege anything about Defendants' conduct, and those paragraphs leave unanswered many questions regarding Alpha Modus's theory of infringement. Compl. ¶¶ 59–62. Alpha Modus alleges that Defendants use RFID tags, provide a branded app to their customers, and use unspecified video camera and inventory technologies for undescribed purposes—Defendants must guess what other aspects of their business are implicated by Alpha Modus's vague allegations and sweeping definition of Accused Products. *See id.*

Alpha Modus, for example, does not allege anything about Defendants' conduct regarding "gather[ing] sentiment information" ('890 Patent at 21:54–55), using "video image devices" ('880 Patent at 21:56–57), sending a "communication to a retail person" in real time (*id.* at 22:12–16), providing advertisements or coupons related to products with which a shopper physically interacted ('731 Patent at 22:23–27), or identifying the "one or more stops that the first person makes within and about the retail store" ('121 Patent at 22:21–23). Defendants cannot investigate any factual allegations related to those claim elements because Alpha Modus made no such allegations. Alpha Modus has failed to satisfy its pleading burden because it does not allege facts that would show the Accused Products perform the claimed method steps. *See Iqbal*, 556 U.S. at 679 (legal conclusions "must be supported by factual allegations"). A plaintiff "cannot assert a

9

plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8*, 4 F.4th at 1353.

The Complaint is like others dismissed in this District. In *Ruby Sands*, this Court dismissed a complaint that "plainly fail[ed] to state a claim for relief that [wa]s plausible on its face." *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016). While the complaint "definitively represent[ed] that . . . claim limitations [we]re met by a mobile device," the complaint "ma[de] no factual allegations that even remotely suggest[ed]" that the alleged infringer's products embodied or contained the accused functionality. *Id.* Because this Court could not "make a plausible inference of direct infringement **based on the facts pleaded**," it dismissed the claims for direct infringement. *Id.* at *4 (emphasis added); *see also De La Vega v. Microsoft Corp.*, Nos. 19-cv-00612-ADA, 19-cv-00617-ADA, 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 7, 2020) (dismissing complaint that did not identify limitations from the patent "in the context of the accused instrumentality and/or describe how each operate[d]").

Defendants do not seek to impose a heightened pleading standard requiring exhaustive, element-by-element descriptions of the precise technical mechanisms of the allegedly infringing Accused Products. Defendants instead seek the minimum amount of detail that this Court has held is necessary to give an accused infringer notice of what is at issue in a case—allegations concerning what Defendants allegedly do that supposedly runs afoul of Alpha Modus's patents. *See Greenthread, LLC v. OmniVision Techs., Inc.*, No. 2:23-cv-00212-JRG, 2023 WL 8653155, at *3 (E.D. Tex. Dec. 14, 2023) ("It is sufficient in this case that [the plaintiff] identified the accused products **and explained how at least a representative product infringes** with enough detail to put [the defendant] on notice of what is being accused of infringement." (cleaned up; emphasis added)). Alpha Modus has failed to allege facts that if proven would show that the Accused

10

Products are used to gather sentiment information, leverage video images devices, communicate with retail persons in real time, provide advertisements or coupons to a customer related to products with which that customer physically interacts, or track the in-store stops a shopper made within the store, among other deficiencies. This failure to sketch even an outline of an infringement theory as to those elements means that Alpha Modus's allegations are the sort of threadbare recitations of legal conclusions that courts consistently find to be insufficient under *Iqbal*/*Twombly*.

Because the Complaint provides no fair notice of the alleged factual basis for direct infringement, those claims should be dismissed.

### B.    Alpha Modus fails to plausibly plead a claim for induced infringement.

#### 1.    Alpha Modus does not plausibly allege a direct infringer.

To plead induced infringement, a plaintiff must first allege "facts sufficient to allow an inference that at least one direct infringer exists." *De La Vega*, 2020 WL 3528411, at *7. Alpha Modus has not met that threshold.

As explained above, Alpha Modus does not plausibly allege that Defendants directly infringe the claims of any Asserted Patent. Nor does it identify any third party who allegedly performs each step of any asserted method or uses any accused system. Instead, Alpha Modus recites formulaic statements that Defendants "knowingly induce, aid, and direct others to use the Accused Products in a manner that infringes the [Asserted Patents]" (Compl. ¶¶ 84, 110, 134, 158), and that "Inditex's actions and the manner in which the Accused Products are used in Inditex's stores, consistent with Inditex's instructions, demonstrate Inditex's specific intent to induce infringement of the [Asserted Patents]" (*id.* ¶¶ 88, 114, 138, 161). Assuming Alpha Modus includes Defendants' "customers and staff" as allegedly induced infringers (*id.* ¶¶ 89, 115, 139, 162), Alpha Modus fails to allege anything regarding *what* conduct those individuals supposedly engage in or

11

*how* that conduct practices the asserted patent claims. Such conclusory allegations get no presumption of truth. *Twombly*, 550 U.S. at 555.

Without factual allegations identifying at least one direct infringer, Alpha Modus cannot state a claim for induced infringement. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009); *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-cv-876-SDJ, 2020 WL 6781566, at *5 (E.D. Tex. Nov. 17, 2020) ("Where a plaintiff has not adequately pleaded an underlying act of direct infringement, theories of indirect infringement must be dismissed."); *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697, at *7 (E.D. Tex. Mar. 3, 2017), *report & recommendation adopted*, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017); *De La Vega*, 2020 WL 3528411, at *7.

### 2.    Alpha Modus fails to plausibly allege intent or knowledge.

Beyond the lack of direct infringement, the claims of indirect infringement are also insufficient because Alpha Modus does not allege any facts to establish Defendants' knowledge or specific intent. Induced infringement requires factual allegations showing both (1) knowledge of the asserted patents and (2) a specific intent to cause infringement. *See Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 828 (E.D. Tex. 2019). An inducing infringer must know that the induced acts would constitute patent infringement, or, at a minimum, be willfully blind to the infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011). Willful blindness, in turn, requires sufficient allegations that the defendant "subjectively believe[d] that there [wa]s a high probability that a fact exist[ed]" and took "deliberate actions to avoid learning of that fact." *Motiva*, 408 F. Supp. 3d at 829 (quoting *Global-Tech*, 563 U.S. at 768).

Alpha Modus pleads no facts supporting either knowledge or specific intent. Although the Complaint repeatedly alleges that Defendants acted with "specific intent to induce infringement," it is silent about *how* Defendants purportedly encouraged or directed infringing acts. *E.g.*, Compl.

12

¶ 86. Alpha Modus cites the "use of," "actions," or "manner" of using the Accused Products (*e.g.*, *id.* ¶ 87–88), yet fails to describe what those actions are, how they relate to infringement, or how they reflect specific intent.

Vague assertions about "use" or "actions" cannot support an inducement claim. *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-751-JDL, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015) (dismissing induced infringement claim because general allegations that the accused infringer provided the accused products with instructions were "insufficient to create a reasonable inference of specific intent[]"). Alpha Modus also invokes the idea that Defendants provide "instructions" to others but fails to include any detail whatsoever about those instructions, such as what they are, how they are communicated, and to whom. *E.g.*, Compl. ¶ 88. Plausible allegations of induced infringement based upon the alleged direct infringer's instructions require factual allegations at least describing those instructions and how the instructed use constitutes infringement. *See Motiva*, 408 F. Supp. 3d at 831 (patentee plausibly alleged induced infringement by identifying "specific classes of information relevant to induced infringement" including "instruction manuals for using the Accused . . . Products" and "advertisements and promotional materials for uses of the Accused . . . Products in an infringing manner"); *NXP USA Inc. v. MediaTek Inc.*, No. 2:21-cv-00318-JRG, 2022 WL 799071, at *2 (E.D. Tex. Mar. 15, 2022) (finding that allegations related to instructions were sufficient when supported by "example Internet hyperlinks to such support, product literature, and other information provided by" the defendant). Alpha Modus's conclusory use of the word "instructions" as part of its recitation of claim elements fails to sufficiently identify the specific classes of information required to plausibly allege induced infringement. *See, e.g.*, Compl. ¶ 88.

Alpha Modus also does not allege facts showing that Defendants knew of the Asserted

13

Patents. The Complaint states only that Defendants were aware of the Asserted Patents "at least as early as the filing of this Complaint." *E.g.*, *id.* ¶ 64. Importantly, Alpha Modus's use of "at least as early" demonstrates that its allegations are not limited to post-suit conduct. *Id.* The assertion of pre-suit knowledge is wholly unsupported by the Complaint's allegations. Alpha Modus does not allege that Defendants received pre-suit notice, were involved in licensing discussions, cited the patents in their own filings, or were otherwise made aware of the Asserted Patents before the filing of the Complaint. Such bare knowledge allegations are inadequate. *See Touchstream Techs., Inc. v. Altice USA, Inc.*, No. 2:23-cv-00060-JRG, 2024 WL 1117930, at *2–3 (E.D. Tex. Mar. 14, 2024) (dismissing willful infringement claims "prior to service of the original complaint" because pre-suit discussions between the parties did not specifically address the asserted patents post-issuance); *Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, No. 6:11-cv-495-LED, 2013 WL 12153575, at *3 (E.D. Tex. Mar. 25, 2013) (rejecting conclusory allegations of knowledge); *Atlas Glob. Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721, 728 (W.D. Tex. 2022) (pleading awareness of a "patent portfolio without more is insufficient").

Alpha Modus's willful-blindness allegations are equally deficient. The Complaint identifies no conduct suggesting that Defendants believed there was a high probability that the Asserted Patents existed, nor any deliberate steps taken to avoid learning of them. Courts have rejected such unsupported allegations. *See, e.g.*, *Signode Indus. Grp. LLC v. Samuel, Son & Co.*, No. 2:24-cv-80-JRG, 2024 WL 3543408, at *4 (E.D. Tex. July 25, 2024) (dismissing willful-blindness claim that "fail[ed] to even allege that Defendants took deliberate actions to avoid learning of the Asserted Patents").

Alpha Modus's pre-suit induced infringement claims must be dismissed because it fails to adequately allege pre-suit knowledge or willful blindness and its post-suit induced infringement

14

claims must be dismissed because its conclusory invocation of the concept of instructional materials is insufficient.

### C. Alpha Modus fails to state a claim for enhanced damages.

Alpha Modus fails to state a claim for enhanced damages under 35 U.S.C. § 284. Because the Complaint has not adequately pleaded direct or indirect infringement, its enhanced-damages theory also fails. "[I]f there is no infringement, there cannot be willful infringement." *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, 988 F.3d 1334, 1341 (Fed. Cir. 2021).

In the alternative, Alpha Modus's allegations do not support an award of enhanced damages. This Court has dismissed similar complaints that fail to "adequately plead[] facts supporting pre-complaint willfulness[.]" *Preferential Networks IP, LLC v. AT&T Inc. Mobility, LLC*, No. 2:16-cv-01374-JRG-RSP, 2017 WL 3816109, at *4 (E.D. Tex. July 15, 2017). As explained above, Alpha Modus alleges only that Defendants discovered the asserted patents "at least as early as the filing of this Complaint." *E.g.*, Compl. ¶ 64. Such a conclusion provides no factual basis for how or when Defendants learned of the patents, how or when Defendants purportedly knew their conduct infringed, or what conduct could support an inference of deliberate wrongdoing. Accordingly, the Court must dismiss Alpha Modus's claims for willfulness and enhanced damages.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss Alpha Modus's Complaint for failure to state a claim.

15

Dated: May 4, 2026                     Respectfully submitted,

*/s/  Shaun W. Hassett, with permission for*
*Taniel Anderson*
Michael E. Jones, State Bar No. 10929400
Shaun W. Hassett, State Bar No. 24074372
**POTTER MINTON**
102 North College, Suite 900
Tyler, TX 75702
Tel: 903-597-8311
mikejones@potterminton.com
shaunhassett@potterminton.com

Janine A. Carlan, DC Bar No. 464254 (lead attorney)
Taniel Anderson (*pro hac vice*)
**ARENTFOX SCHIFF LLP**
1717 K Street, NW
Washington, DC 20006-5344
Tel: 202-857-6000
janine.carlan@afslaw.com
taniel.anderson@afslaw.com

Julie A. Vernon (*pro hac vice*)
Kevin J. Cassato (*pro hac vice*)
**ARENTFOX SCHIFF LLP**
233 South Wacker Dr., Suite 7100
Chicago, IL 60606
Tel: 312-258-5500
julie.vernon@afslaw.com
kevin.cassato@afslaw.com

***Attorneys for Defendants Industria de Diseño***
***Textil, S.A. and Zara USA, Inc.***

16